UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY JOHNSON,<br><br>  Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, et al.,<br><br>  Defendants. | Case No. 23-cv-00158-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 21 |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for benefits or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed for Title II benefits on September 23, 2020. (Administrative Record ("AR") 176.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 90-95, 97-103.) On April 21, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 104.) The hearing was held on September 14, 2021. (AR 27-50.)

Following the hearing, the ALJ denied Plaintiff's application on January 7, 2022. (AR 12-26.) A request for review of the ALJ's decision was filed with the Appeals Council on March 10, 2022. (AR 173-175.) The Appeals Council denied Plaintiff's request for review on November 28,

1   2022. (AR 1.) On January 12, 2023, Plaintiff commenced this action for judicial review pursuant
2   to 42 U.S.C. § 405(g). (Compl., Dkt. No. 2.)
3          On August 21, 2023, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt.
4   No. 18.) On September 20, 2023, Defendant filed an opposition and cross-motion for summary
5   judgment. (Def.'s Opp'n, Dkt. No 21.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth

step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III. DISCUSSION

Plaintiff challenges the ALJ's decision on a single ground, namely whether the ALJ erred by failing to provide clear and convincing reasons for finding Plaintiff not credible. (Pl.'s Mot. at 5.)

The ALJ must conduct a two-step analysis to assess a claimant's subjective testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

> [U]nder step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom. If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Id.* (internal citations and quotation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation omitted).

3

In this case, the ALJ found that Plaintiff's medical impairments could reasonably be expected to produce her alleged symptoms. (AR 20.) Therefore, absent affirmative evidence of malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony. *See Tommasetti*, 533 F.3d at 1039. If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Court "may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was inconsequential to the ultimate nondisability determination." *Id*. (internal quotation omitted).

Defendant argues that the ALJ reasonably rejected Plaintiff's allegations because (1) her allegations were at odds with medical records showing that her symptoms improved with treatment, and (2) Plaintiff's allegations were not consistent with her reported activities of daily living. (Def.'s Opp'n at 3, 4.) Plaintiff challenges the ALJ's decision for failing to provide clear and convincing reasons for rejecting Plaintiff's testimony, arguing that (1) the ALJ failed to consider objective medical evidence, (2) the ALJ gave improper weight to non-examining doctors' opinions, (3) the ALJ did not properly consider the context under which Plaintiff received unemployment benefits, and (4) the ALJ mistakenly interpreted Plaintiff's future kickboxing goals as her current hobby. Taken together, Plaintiff argues that these mistakes by the ALJ require remand. (Pl.'s. Mot. at 1, 9.)

The Court considers each in turn.

### A.  Objective Medical Evidence

Plaintiff argues that the ALJ failed to consider all the objective evidence in the record in reaching his conclusion that Plaintiff's testimony was not credible. (Pl.'s Mot. at 8.) Specifically, Plaintiff contends that the ALJ "only reviewed treatment evidence up through January 2021," and did not consider Plaintiff's ongoing treatments after January 2021. (*Id*.) As a result, Plaintiff asserts, the ALJ did not consider evidence that contradicts the ALJ's determination that Plaintiff was cured. (*Id*.)

The ALJ did consider medical evidence after January 2021. The ALJ concluded that Plaintiff has several severe impairments that significantly limit her ability to perform basic work

4

activities, including mild to moderate carpal tunnel syndrome, status post release surgery on both hands, shoulder impingement, and mild degenerative changes to her spine. (AR 18.) The ALJ notes that Plaintiff was conservatively treated for carpal tunnel syndrome in 2020, and eventually underwent carpal tunnel release surgery on her right and left hands on July 21, 2020 and on August 28, 2020, respectively. (AR 20.) The ALJ then observes that Plaintiff received shoulder injections in January 2021 and underwent physical therapy, and that her symptoms improved such that in March 2021 Plaintiff reported doing better and was no longer experiencing neck pain. (AR 19-20.) The ALJ also noted that an MRI of Plaintiff's cervical spine taken on June 6, 2021 was normal, but bilateral shoulder pain due to impingement syndrome was noted. (AR 19.) Lastly, the ALJ notes that an MRI taken of the right shoulder on June 23, 2021 showed no evidence of a tendon tear, and that carpal tunnel was not listed as an active problem in June 2021. (AR 20.)

It appears, however, that the ALJ did not consider medical evidence presented after July 2021. On July 7, 2021, Plaintiff was diagnosed with impingement on the right shoulder and adhesive capsulitis on the left shoulder. (Pl.'s Mot. at 8; AR 3477.) Plaintiff received medication and an injection that day. (*Id.*) Additional medical records show that Plaintiff continued receiving treatment for her shoulder pain at least through September 2021. (*See, e.g.,* AR 3539.) Plaintiff argues that her symptoms and subsequent treatment after July 2021 is evidence that she was receiving treatment, but was not cured, and the ALJ erred by failing to consider Plaintiff's ongoing medical issues. (Pl.'s Mot. at 8.)

The Court agrees. The ALJ did not offer clear and convincing reasons for discounting Plaintiff's testimony that her symptoms continued and makes no mention of the medical evidence after July 2021 that supports her assertions. Thus, it is unclear how or why the ALJ concludes that "all [of Plaintiff's] conditions have been amenable to treatment" when medical evidence in the record shows that Plaintiff continued to report problems and receive treatment after July 2021. (AR 20.) The ALJ erred in finding Plaintiff not credible on this basis.

### B.  Medical Opinions

Plaintiff also argues that the ALJ erred in giving great weight to the state agency non-examining physicians who rendered their opinions in December 2020 and March 2021. (Pl.'s St. at

5

8-9.)

        Under the regulations adopted in 2017, an adjudicator is required to consider all medical opinions and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors." 20 C.F.R. § 416.920c(a)-(c). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," and the ALJ is required to explicitly address supportability and consistency in their decision. *See* Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853; 20 C.F.R. § 404.1520c(b)(2); *see also Woods v. Kijakazi,* 32 F.4th 785, 789 (9th Cir. 2022*)*. As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence. *See Woods,* 32 F.4th at 792; *see also Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020) (citing 82 Fed. Reg. at 5852) (finding that, under the new regulations, "[t]he Court must ... continue to consider whether the ALJ's analysis has the support of substantial evidence"). Additionally, 20 C.F.R. § 404.1520(c)(5) states "[w]hen [adjudicators] consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 404.1520(c)(5).

        The 2017 regulations apply to Plaintiff because she filed her claim on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). But "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th 785 at 792. The ALJ must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

6

1       The ALJ failed to do so. The ALJ here considered the medical opinions and
2   administrative medical findings from state agency doctors Dr. J. Allen in December 2020 and Dr.
3   A. Dipsia in March 2021. (AR 20.) Both assessments find that the Plaintiff is capable of light
4   work. (*Id*.) Plaintiff argues that the ALJ erred by relying on these opinions when they were not
5   based on the entire record before the ALJ. (Pl.'s Mot. at 9.) Plaintiff argues that the state agency
6   doctor in December 2020 was (1) unfamiliar with the record of Plaintiff's medical history before
7   the ALJ and (2) was not aware of the subsequent injections Plaintiff had to receive. (*Id*.) Plaintiff
8   further contends that the state agency doctor who issued an opinion in March 2021 was only aware
9   of one series of injections and was not aware of subsequent treatment. (*Id*.) Plaintiff points out
10  that during her appointment on July 7, 2021 with primary care doctor Dr. Alana Wright, Plaintiff
11  complained that the injections she received did not provide significant relief. (*Id*. at 4; AR 3475.)
12  The record also shows that Dr. Wright told Plaintiff that her right shoulder is most consistent with
13  impingement and that she would likely need to continue physical therapy. (AR 3477.) Dr. Wright
14  also noted that Plaintiff's left shoulder appeared to be more stiff and was potentially in the early
15  stages of adhesive capsulitis. (*Id*.) Dr. Wright administered an injection to Plaintiff's left
16  shoulder that day. (*Id*.)

17      The ALJ notes that the alleged onset date for Plaintiff's symptoms is June 27, 2020, and as
18  a result, states:

> As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: the undersigned has reviewed the December 2, 2020 DDS Physical Assessment of Dr. J. Allen at Exhibit 1A and the March 2, 2021 DDS Physical Assessment of Dr. A. Dipsia at Exhibit 3A. Both assessments find the claimant capable of light work with frequent handling and fingering with the bilateral upper extremities, no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching, and crawling.

(AR 20.) The ALJ makes no mention of Dr. Wright's opinion or medical treatment and offers no
explanation for discounting it. Dr. Wright's progress notes are from Plaintiff's July 7, 2021
visit—long after Plaintiff's onset date. (AR 3475.) The state agency doctors rendered their

7

1  findings in December 2020 and March 2021, and the record clearly shows that Plaintiff continued
2  receiving medical treatment for her relevant symptoms after March 2021. (*See* AR 837-1236;
3  1237-1241; 1242-1252; 1393-1399; 3382-3551.) This omission also makes it unclear whether the
4  ALJ satisfied requirements under 20 C.F.R. § 404.1520(c)(5) to consider whether the evidence
5  after the state agency doctors' findings makes their opinions more or less persuasive. *See* 20
6  C.F.R. § 404.1520(c)(5).

The ALJ did not acknowledge Dr. Wright's medical opinions, and generally gives no explanation for rejecting Plaintiff's treating doctors' opinions as unsupported or inconsistent. Accordingly, the Court finds that the ALJ erred.

### C. Unemployment Benefits

Plaintiff argues that the ALJ erred in finding Plaintiff not credible because she received unemployment benefits. (Pl.'s Mot at 6.)

The receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir.1988); *accord Schmidt v. Barnhart*, 395 F.3d 737, 745–46 (7th Cir. 2005) (recognizing receipt of unemployment benefits could impact a claimant's disability claim). But receipt of unemployment benefits is only inconsistent with disability allegations when a claimant holds herself out as available for full-time work, not part-time work. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Giuliano v. Colvin,* 577 F. App'x 859 (10th Cir. 2014) (noting that a claimant who receives unemployment benefits while looking for part-time work may not be inconsistent with allegations of total disability); *Mulanax v. Comm'r of Soc. Sec*., 293 F. App'x 522, 523 (9th Cir. 2008) ("…we note that Mulanax's receipt of unemployment benefits does not by itself support a conclusion that she is not credible.")

The ALJ noted that Plaintiff received unemployment insurance in 2020 and 2021, and in order to receive unemployment, Plaintiff needed to certify that she was able and available to work. (AR 18, 21.) Plaintiff contends that receipt of unemployment benefits does not preclude Social Security benefits because the record does not specify whether Plaintiff claimed she was available for full-time or part-time work. (Pl.'s Mot. at 7.) The record does not contain Plaintiff's

8

1    unemployment benefits application, and the evidence in the record that Plaintiff "collected
2    unemployment" does not give rise to a legally sufficient reason for which the ALJ could rely on to
3    support his adverse credibility determination. (Pl.'s Mot. at 7; *see Miller v. Colvin,* No. CV 13-
4    1259-E, 2014 WL 1873276 at *4 (C.D. Cal. May 9, 2014) ("There is no indication whether
5    Plaintiff based her claim for unemployment benefits on full-time or part-time work. On this
6    record, therefore, the fact that Plaintiff may have claimed to be able to do some work does not
7    support the ALJ's adverse credibility determination.").)

8        Defendant counters that even if Plaintiff is correct, an ALJ "may consider *any* work
9    activity, *including part-time work*, in determining whether a claimant is disabled." (Def.'s Opp'n
10   at 5; *Ford*, 950 F.3d at 1156.) That may be true, but the court in *Ford* also considered the
11   plaintiff's ability to work an eight-hour shift. *Id.* ("[Plaintiff's] own testimony established that she
12   was able to work occasional eight-hour shifts.") Here, there is nothing in the record to establish
13   what capacity Plaintiff was able to work part-time. Plaintiff testified that to receive
14   unemployment, she certified that she was able and available to work but did not assert that she
15   was able to work eight-hour shifts. (AR 32.) The ALJ cites to evidence only showing that Plaintiff
16   received unemployment benefits. (*See* AR 18, 21.) But the exhibits cited by the ALJ (AR 187-
17   188, 198-199) offer no indication of how long or how often Plaintiff would be able to work.
18       Therefore, the Court finds that the ALJ erred for not finding Plaintiff credible on this basis.

19   **D.  Plaintiff's Hobbies and Goals**

20       Lastly, Plaintiff argues that the ALJ mistakenly contributed Plaintiff's kickboxing and
21   gardening hobbies as reasons for finding Plaintiff's testimony not credible. (Pl.'s Mot. at 9.) [1]
22   Defendant counters that the treatment notes in question do not indicate that these are aspirational
23   goals, and that the reviewing court must uphold the ALJ's decision if it is rational, even where the
24   evidence is susceptible to more than one rational interpretation. (Def.'s Mot. at 5.)

25       While the Court acknowledges Defendant's point, that is not the case here. The ALJ

---

[1] Plaintiff also points out that the pages the ALJ cites for his findings (AR 841-843, 889, 1390, 1393, 3297) do not state anything about kickboxing and gardening. The Court notes that Exhibit 7F does include information about Plaintiff's hobbies, but that AR 867-868 are the correct pages.

9

observes that Plaintiff's physical therapy exams "confirm exercising in the form of walking and kickboxing," and that Plaintiff is "capable of activities such as kickboxing and gardening." (AR 20.) Plaintiff identifies two places in the record where Plaintiff discussed her kickboxing hobby. (Pl.'s Mot. at 9.) The Court has identified three mentions of Plaintiff's kickboxing activities. First, Plaintiff's physical therapy progress notes from October 19, 2020 lists kickboxing as one of Plaintiff's activities. (AR 688.) Under the section "patient goals" it lists "return to work and kick boxing". (*Id*.) Second, the notes from Plaintiff's April 20, 2021 physical therapy televisit clearly lists "unable to perform kickboxing class" as one of Plaintiff's aggravating factors. (AR 867.) Third, the next page of the physical therapy report lists Plaintiff's hobbies as boxing, cooking, and gardening. (AR 868.) The response to the question about Plaintiff's goals for physical therapy is "[g]et back to working out." (*Id*.) Finally, during a follow up physical therapy visit on May 12, 2021, under treatment goals it states "[p]atient will be able to participate in kick boxing class with no more than 1/10 B shoulder pain in 12 weeks." (AR 854.)

There appears to be nothing in the record to support any finding that Plaintiff met her goal to resume kickboxing twelve weeks after her May 12, 2021 appointment. Indeed, a little over a month later, a June 23, 2021 message from Plaintiff's provider Dr. Austin Fain states that MRI results "confirms our suspicion of tendinosis which we can see in some of the rotator cuff muscles and what could possibly be frozen shoulder on the left side." (AR 839.) Dr. Fain says her diagnosis can be "notoriously difficult to treat" and that he "reached out to the orthopedic surgeon" for options, indicating that Plaintiff's ailments had not sufficiently resolved. (*Id*.)

Ultimately, the record establishes that Plaintiff's goal was to resume kickboxing as an activity, but there is nothing in the record to suggest that Plaintiff was actively participating in her hobbies at the time her claim was pending. The physical therapy reports cited by the ALJ directly contradicts the ALJ's finding that Plaintiff was actively engaging in that hobby. (*See* AR 20.) The reports also contradict Defendant's argument that "the treatment notes in question" failed to indicate that Plaintiff's activities "were aspirational goals." (Def.'s Opp'n at 4.) The Court finds that the ALJ misread the record and erred in finding her not credible based on Plaintiff's kickboxing goals.

10

### E. Harmless Error

Because the Court concludes that four of the ALJ's reasons supporting his adverse credibility finding are invalid, now the Court must "determine whether the ALJ's reliance on such reasons was harmless error." *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195–97 (9th Cir.2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). *Batson* makes clear that reviewing the ALJ's credibility determination where the ALJ provides specific reasons supporting such is a substantive analysis. *Carmickle.,* 533 F.3d 1155 at 1162. If there remains substantial evidence supporting the ALJ's conclusions on credibility, and the errors do not negate the validity of the ALJ's ultimate conclusion, such errors are deemed harmless and do not warrant reversal. *Id.*

The Court finds that the ALJ's reliance on such reasons does not constitute harmless error. The ALJ credits the bulk of his decision to the issues raised above, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision, mainly that the claimant improved with treatment (Exhibit 13F/1940, 2050). The claimant is also capable of activities such as kickboxing and gardening and collected unemployment in 2020 and 2021 (Exhibit 8D), which requires an individual to certify that he/she is able and available to work. The undersigned is in no way implying that the claimant does not experience some limitations due to her impairments.

(AR 20-21.) The ALJ's decision does not appear to take into consideration medical records after July 2021, or Plaintiff's primary care doctor's assessment of her symptoms, again in July 2021. In this record, the unemployment records do not adequately describe the conditions that Plaintiff asserted she could work, and Plaintiff's physical therapy notes do not support the ALJ's conclusions that Plaintiff's daily activities are inconsistent with the medical evidence presented. It is unclear what other substantial evidence the ALJ relied on to find Plaintiff less than fully credible. Aside from the above, the ALJ does not identify any other reasons for discrediting Plaintiff's testimony.

Accordingly, the Court finds that the ALJ erred, and that remand is necessary to allow the

11

ALJ to determine the extent to which Plaintiff's testimony affects her disability claim. *Brown-Hunter* 806 F.3d at 495-96 (remanding for further proceedings to allow the ALJ to make a proper disability determination where the ALJ failed explain why testimony was not found credible).

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand for further proceedings is appropriate. On remand, the ALJ must properly evaluate the evidence based on applicable law and consistent with this order.

IT IS SO ORDERED.

Dated: March 29, 2024

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge